Okay, let's hear from the appellate. Good afternoon, Your Honors. May it please the Court. I am here, Your Honors, to point out our brief that on February 1, 2011, Mr. Arturo Castellanos, my client, was indicted for possession of a conspiracy to possess and intend to distribute cocaine, hydrochloride. Pursuant to those indictments, we raised a motion to suppress, alleging that the search and seizure of a vehicle that was transported on a car carrier was illegally searched and item seized. When the vehicle was delivered to the carrier to be transported, was there some form of a contract that was executed with the carrier? Apparently, as I'm understanding and evidence pointed out, is when a person wishes to carry to have a vehicle transported, they go to the carrier, in this case it was direct auto service carriers, and they pay the fee, they get a bill of lading, there's a yellow slip I understand, which is what they fill out, the carrier keeps that, the pink slip is then given to the person who's hiring the services, apparently the person who's receiving the shipment gets that pink slip, and when the carrier Was that introduced into evidence in this case? No sir, that was not introduced into evidence at this point. It was introduced in a sense, that's what apparently that was being testified to by a state's witness, and there was references made to the pink slip, and whenever my, when Mr. Costianos did arrive to pick up the vehicle, he had both the pink slip The terms of the conveyance are something we don't know. The terms of whatever contract was made to convey the vehicle, we don't know what they were. No, Your Honor, I just implied that the terms were that it would be delivered to a certain address in Greensboro, on Montelieu, if I'm saying that correctly, Street, and the individual with the pink slip, it was notified, it was listed as Wilmer Castaneda, and that was one who was supposed to pick up the Well, what I was trying to get at was whether there was any evidence, which I'm not aware of, in this record that would have indicated that the consignment of the vehicle gave the carrier certain rights in terms of entering the vehicle or things of that nature. No, Your Honor, there was nothing presented in evidence that would have happened. We don't know anything like that from this record. No, Your Honor, there's no indication that he had any ability, other than that his only record at that point. Beyond that, the record is absent, as far as that information, and it's pointed out Do we know who owned the vehicle? Well, Your Honor, from the record, do we know? Yes, from the record, Mr. Castellanos showed up with title. No, not who showed up with title, who owned the vehicle? His name was on the title. Well, I believe, if I recall from the facts, it was Mr. Castellanos. There was Wilmer Castanet, who was also listed as a shipper, and I don't know if the facts, and I have to again go back, it was not clear from the facts, to my knowledge, who was actually on the title. I do recall that the Captain Roberts did testify that Mr. Castellanos did have title to the Ford Explorer. My assumption was that was Mr. Castellanos. Is there any identification of him as the shipper? The shipper was listed, I believe, as Wilmer Castanet. A different person? Well, that at least appeared to be, but I think further investigation indicated that Wilmer Castanet was, in fact, Arturo Castellanos. Is there evidence in the record of that? Well, the inference was very strong that that was the same person. That's all that was presented in the motion to suppress, but it was a conclusion, I believe, on crosses I brought out, their conclusion was Mr. Castellanos was, in fact, Wilmer Castanet. Inside a duffel bag that was found, that was... That ain't much of a disguise to use your right last name and just change your first name. It was Castanet versus Castellanos. Oh. I may have misspoken. I had not. It was very close. And my client did, in fact, obtain the services of a police officer to drive him to apparently pick up the truck, which they just escorted him straight to the deputy's office. He was open and out there. Going back to duffel bag, there was a telephone number. The number that went to Mr. Wilmer Castanet actually was the same, allegedly, the government's position, and there's probably a lot of substantiated proof to that, that a cell phone recover from a duffel bag that apparently belonged to Mr. Castellanos, or at least looked like it belonged to Mr. Castellanos, that cell phone recover from the duffel bag had the same number as Wilmer Castanet. Now, Mr. Wilmer, now, the conversation with Captain Roberts, when he first was trying to ascertain who owned the vehicle, who was going to pick it up, he thought he was speaking into a Wilmer Castanet, who said, I'm going to come, either I'm going to come, I'm going to send somebody to come pick it up, and a few days later, that's whenever Mr. Castellanos showed up to obtain the vehicle from the, what he thought was a record service, was in fact, he got arrested and was determined that the vehicle wasn't pounded. When you give your car to a carrier, what areas of the car do you not have an expectation of privacy? And that's the whole thrust of this. When we did our motion, it appeared to the district court's position was, there is no expectation of privacy. In any part of it, no matter where. Right. The court did quote a United, uh, Seventh Circuit decision. My question to you is, what part, your judgment, legal opinion, or whatever, what you're arguing, what areas of the car does the owner not have an expectation of privacy? We argue he does have the expectation of privacy, but not, but understandably, if it's understood that when you turn a car over to a car carrier, he's going to go into that car and drive it up on the ramp, we would argue, and also given the configuration of a car, being an open window, aside from facts, and this is not the case, where the car windows are blocked and not given a key, I don't have a transport that way. I guess you could, but in this case, that's not the case. It appeared there was a, the car was normally, uh, was in normal condition. So he wouldn't have an expectation of privacy in, you know, if you just went up to the car window and looked in, the front seat or the back seat, wouldn't have an expectation of privacy? No, sir, I wouldn't. I would think you may have an expectation, it may not be legitimate. It may not be what the society would recommend. It would be reasonable. What about the closed trunk? The trunk, Your Honor, that's different. We would argue clearly at that point, um, first of all, a person, subjectively, looks like Mr. Castellanos himself, and no one would expect to have someone who was trying to just drive their car on a car ramp to actually go looking in the trunk. There's no reason for it. It's not part of the, of the need to transport a vehicle. So that would clearly be subjective, and the objective, I think, society would recognize that as a reasonable person, you would expect someone who's driving your car onto a ramp to actually be going into the trunk. There just wouldn't seem to be a need, and there was no testimony to that. There was no evidence presented that, well, this could be, but again, I think the court was pushing the, was leaning toward the fact. Well, that was your burden, though, wasn't it? Pardon me? Isn't it your burden to show the existence of a reasonable expectation of privacy? And we did. And I would contend we did in court, because- And how did you do that? Because my client, first of all, it was, apparently, it was his vehicle. He was coming to pick it up. He said, apparently, where's the evidence in the record that your client either owned the vehicle or had been authorized by the owner to ship it? Where's the evidence in the record? He had actually, whenever the car, the truck was first delayed, the carrier, he made the phone calls. He was contacting Captain Roberts, asking, where's my car, where's my vehicle? And they were working out, it turned out to be Mr. Castellanos, who was actually showed up with title in the bill of lading and saying, this is my Ford. Now, there was a duffel bag, he said, that's not mine. And so he disclaimed that, but he did say, that is my Ford, I paid for it, I bought it, that's mine. So you're referring to the phone conversation between- Both the phone conversation and his coming up with the title in his hand and the bill of lading and saying, this is my Ford Explorer, and I need to get it now. Are you required to put on evidence to show a reasonable expectation of privacy in the inside of the gas tank? Well, Your Honor- In that where the dope was discovered? I think in every case, I think the burden, I think typically should be, I suppose, I guess it is, to have some argument. Once you can show there's a reasonable expectation of privacy, then the burden shifts to the government because the Fourth Amendment, as we pointed out, says that if there is a reasonable expectation of privacy, and if there is no prejudicial approval, a warrant, then it's per se unconstitutional or unreasonable. My question, which I think sort of follows Judge Davis's, is were you required to put on some sort of evidence that there was a reasonable expectation of privacy inside the gas tank? Well, I believe if we were, we did. Believe what? It's our position that if we were, we did do that by the same configuration and by simply the argument that it was a vehicle and it would be reasonable to believe no one's going to be putting a scope, and I admit that argument also in court, that no one expects to have a scope inserted into their gas tank and looking in there. Certainly we would not, we did not argue or stand strong in the fact that we did not expect someone to look in the passenger compartment and perhaps find items in there. No expectation of privacy that is reasonable. But to intrude into an area that is closed off and is not in the normal course of business is not actually accessed normally, then it's our position. We did meet that burden, and by the facts themselves and by Mr. Costiano repeatedly showing up, calling and then showing up and saying this is my Ford and I got a title and I want it. He did show that he did have an interest, an expectation, privacy in that. Okay, you didn't, and this is not a criticism, but you didn't ask the district court to make that finding. And in fact, the district court made the contrary finding, that he didn't have an expectation of privacy, which is another way of saying he doesn't have standing, right? Now, what about consent? I guess that didn't come up at all, right? Well, when the judge, at that point when the court determined there was no standing, the any exception to the search warrant. Well, but does the judge actually say that? He didn't use, did the judge use the word standing? He said there's no legitimate expectation of privacy, but that was the end of the analysis I think at that point. We did address consent in my argument, because I wasn't anticipating exactly where the judge was going to go with his decision. And so, we first argued there was an expectation of privacy that was reasonable. And if the court tried, and if the government tried to fall on consent as an exception to that search warrant requirement, we were arguing that he didn't have, at that point the driver did not have authority to give consent to the gas tank search. Now, if you could in the last few minutes in your opening argument, why doesn't a driver of a transport vehicle have such limited, and if you will, implied authority in response to a legitimate request of a law enforcement officer to the search of a vehicle for which he's got the key? In other words, you can imagine a drug dog alert, well, of course, then you'd have probable cause. But I'm having a difficult time understanding why this isn't legitimate implied consent. Even if I grant you your guy had standing on the theory that you've articulated, why isn't there implied consent here? Well, he has implied consent to where he has access, legitimate access to, like with everything.  But not the key. He permitted the officer to enter the vehicle. That's a search of the vehicle. Now, the officer used his little gadget to look into the tank, but it was still, wasn't it covered by the consent? Well, you know, in every exception to the search warrant requirement, there's always a scope issue. He had consent scope, but only to the area where he had lawful access to, and certainly we would argue the gas tank was not one of them, the trunk wouldn't be one of them. I see you. Every exception is... So you would treat the gas tank like a locked glove compartment for which the driver didn't have the key. In other words, you know, you have these two keys. One works to start the vehicle, but doesn't open the glove compartment. So your view is that the gas tank is akin to a locked glove compartment for which the transport driver does not have a key. Correct. And he exceeded his scope whenever he would give consent in those areas. Can you just take a second and tell me why that analogy holds? As far as the lack of consent to those areas, or the analogy between the gas tank? Yeah. Why is the officer pulling up the seats and dipping his micro-camera down into the gas tank after tapping on the tank and not getting the kind of sound you would expect to get in a full or half-full gas tank? Why is that the same as the officer prying open a locked glove compartment? Oh, there's no difference except maybe a locked glove compartment. Well, I'm suggesting there is a difference. I'm asking you to tell me why there is no difference. The only thing with a locked glove compartment, there may be a legitimate reason for a car driver, carrier driver, to go into a glove box. Not if he doesn't have the key. That's my point. Right. I understand. He doesn't have authority to consent to opening the glove box, right, if he doesn't have the key. And that would be an interesting analysis later in the situation. We'd probably still argue, why would he have authority, just in a general rule, why would a car carrier have to go in a glove box? There may be more legitimate reasons if, on the record, that was brought out in a motion to suppress in the government's response. Maybe there could be some evidence saying, we always have to go in the glove box because we have to look for something or look for a registration or a title. I'm just making stuff up. I'm just trying to see where we are. But to go into a gas tank, Your Honor, I would submit there'd be a harsh strain to ever come up with a reason why we ever go into gas tanks or even trunks or whatnot. Thank you. Okay. Let's hear from the government. Ms. Hairston. If I were to sit out to go and visit Judge Davis and Judge Traxler at their palatial retreats, and since they're so far away, I needed to ship my vehicle so I'd have it to use when I arrived there, would I be deemed to have consented to allow the carrier and at some point a police officer to run a TV scope into the gas tank of my car? Your Honor, may it please the Court, Your Honor, Sondra Hairston, U.S. Attorney's Office, Middle District. Your Honor, I think once you turn the car over to a common carrier, the carrier has lawful possession of the car. If at some point, if he's requested by an officer to look into that car, I think that would be considered consent to the officer looking into the car. That's based on what? Your Honor, I think it's analogous to me, in my mind, and the facts in this case are analogous to drug couriers in most cases. I prosecute dozens of drug courier cases a year where a drug courier is given possession of a car. The car may not be titled to him or her, they don't own it, but they have been put in possession of that car for the purpose of transporting drugs. The car is stopped in an interdiction stop. The courier, the person in possession of the car, is asked by the police officer after various and sundry things. Are you hypothesizing a knowing drug courier or an innocent dude, or does it matter? I don't think it matters, Your Honor. Well, how can it not matter? Well, in this case, Mr. Bledsoe was given this car by someone, and in response to the defendant actually owned that car, and the ownership of the car is not in this record. Okay, you're going back to standing now. Yes, sir. Okay, so counsel says when you look at the evidence in the record, you can put together sufficient evidence for a finding. I agree none was made, but there's evidence sufficient for a finding, if a finding had been made, that he had a sufficiently reasonable expectation of privacy in the vehicle, that he had standing to challenge the search of the vehicle. Now, Judge Tilley, for whatever reason, never used that word. It's kind of odd, frankly. He doesn't say the guy doesn't have standing. He says, sort of in a global way, he has no reasonable expectation of privacy. Your Honor, I think in the record... So what about the telephone contact and all of that? The telephone... That doesn't show standing? No, sir. Why not? Because, first of all, the telephone contact was taking place some seven or eight days later. The defendant argues that the officer knew at that point that this was the defendant's vehicle. The defendant was... I'm sorry to interrupt, but we don't really care what the officer knew, right? Correct. Question is, what were the objective facts regarding who, if anybody in the whole world, had a reasonable expectation of privacy in this vehicle? And that person... And so it doesn't matter when the evidence arose. What's important, I think you agree, is the objective fact of who owned the vehicle, who shipped the vehicle, who had constructive possession of that vehicle, who was entitled to exercise dominion and control over that vehicle. Yes, sir. And the person who shipped the vehicle, the person on the manifest who was expecting the vehicle, is a person by the name of Wilmer Castaneda. And Wilmer Castaneda... That is not... As the defendant. That is not what the evidence in the record... The defendant now argues that, Your Honor... Can you point to the negative evidence in the record to undermine that argument? Your Honor, because the defendant didn't present any evidence at the hearing as to his expectation of privacy in the vehicle, the record shows that when the officer called DAS Auto Service trying to verify who... If there was a Wilmer Castaneda, he said, if this person calls, or if you're contacted by someone by this name, have that person call me. He received a call from a person representing himself to be Wilmer Castaneda. The officer opined or, I guess, decided, well, apparently whoever's calling me, this guy who showed up was the same guy who's calling me. That's not clear in the record. Why isn't that enough to establish the defendant's standing? Well, because the defendant... There's no evidence, Your Honor, that that actually was the defendant calling. The evidence is he showed up. He returned the call and he showed up. That person showed up, Your Honor, but just because he showed up on these facts, the government would argue that that does not definitively establish that he had a legitimate expectation of privacy in that vehicle and the search. The car carrier, and I'm sorry, Judge Agee, if I did not finish answering your question, and I'm sorry, I might have to ask you to repeat it. Well, let's go use Judge Davis' earlier example. The glove box is locked, and the key to the glove box is not turned over to the carrier. Is either the driver or a police officer who happens to be looking in the vehicle, are they authorized to enter that locked glove box? Well, Your Honor, I think if after the consent, the search of the compartments where there is no locked compartment, if that search at some point establishes probable cause, then he can't. Otherwise... What if it... Why doesn't he have to go get a warrant then? Your Honor, I think we're operating on consent. The fact is in this case, the car carrier provided consent to the officer to look inside the vehicle. Well, the district judge didn't rule on consent, did he? He's made no findings of fact on consent. We're just up here on the basis on which he ruled, which is, was there a legitimate expectation of privacy? Yes, sir. That is the sole issue in the defendant's appeal, is whether this defendant had a legitimate expectation of privacy in this vehicle such that he could then contest the consent that was given by the driver. Are you asking... Excuse me. Go ahead. Well, it's more narrower than that, because the only pertinent part of this vehicle for us is inside the gas tank. It seems to me unusual that you would call into question the... That's just why I asked the first question. Someone's expectation of privacy inside the gas tank of their car, that would seem to be the quintessential closed, non-transparent lock container. I mean, it just doesn't seem to be an ordinary event of human existence that police officers walk around cars and put TV scopes down the gas tank. Well, I think, Your Honor, they do, once they do the type of investigation that Deputy Roberts did in this case, which was when he opened the doors to the car and looked in the passenger compartment, he noticed that bolts had recently been undone, and simply, in his experience, knocking on the floorboard of the vehicle, the hollowed-out sound in where the gas tank was supposed to be, then alerted him to the fact that there was something amiss. It looks like that would be a great affidavit to give to the magistrate, to get a search warrant. Well, Your Honor, then that takes us back to the consent issue. Well, I mean, but how can you, if there's nothing in the record that shows the contract of conveyance, there's no finding by the district court that there was a consent given, or the scope of the consent, how does that help you here? Well, Your Honor, the issue, as far as the district court was concerned, and as far as the government is concerned, is whether the defendant who filed the motion to suppress had a legitimate expectation of privacy in that vehicle, and the district court, as the district court saw it, and we do not believe the district court erred, the district court got it right in determining that the defendant had not established a legitimate expectation of privacy in that vehicle. In your judgment, Ms. Hairston, did anyone in the world have a legitimate expectation of privacy in that vehicle? Whoever Will McCastaneda is or was may have, however, our position is, Your Honor, just like with any other drug courier, when the car was turned over to the car carrier, Mr. Bledsoe became an unwitting drug courier at that point. So your argument is that, essentially, the expectation of privacy throughout this vehicle, including the gas tank, evaporated once the vehicle's delivered to the transport company? Yes, sir. Just as the 7th Circuit... What's the principle behind that? In other words, suppose there was no drugs in the tank, okay? So the officer sticks his little camera in there, and there's no drugs. There wouldn't be a motion to suppress. But would there be an action for trespass? There may be, by the owner, in a civil... Wait a minute. Wait a minute. Wait a minute. I think you just contradicted yourself. I don't think so, Your Honor, because we're talking about a criminal action versus a civil action. And again, I'll go back to a common drug courier. A drug courier who may have been hired by a drug dealer to drive a car, or there are some drug couriers who have been given vehicles by a person in command of the drugs and told to drive the car across town. The car is stopped, the car is... And that person allows an officer to search the car. That's what happened here. And as Judge Traxler said, we have no finding with respect to consent. I'm simply... In trying to... I mean, you don't dispute that. We don't have any finding regarding consent, Your Honor. I'm simply addressing, again, the legitimate expectation of privacy issue in that context. But if a drug courier consents, then we don't care about a legitimate expectation of privacy. If the person in possession of a vehicle knowingly consents to a search of the vehicle, that's the end of the inquiry, right? And that's what happened here. Mr. Bledsoe... But we don't have any findings of consent. All we have is a determination of a lack of reasonable expectation of privacy. And because you don't get to the issue of whether the consent was valid or issues of the consent, Your Honor, if this defendant can't challenge it, and that's what we're arguing here. This defendant... I understand that's what you're arguing. And Your Honor, if I could, I would, again, as we have in our brief and the court has it before you, in the Crowder case, it's almost exactly the same facts here. A car is delivered to a car carrier. The car carrier alerts the highway patrol as to another vehicle, not the one in question by Mr. Crowder. The Grand Prix was originally the car that the car carrier alerted the highway patrol to. Once the highway patrol got there and examined the Grand Prix, then the officer asked the car carrier, well, are you suspicious of another vehicle? He said, yes, the Mustang. And then the Mustang was searched. And the Seventh Circuit, we believe, Your Honor, rightly so, concluded that there's no expectation of privacy in that vehicle. Once it's delivered to a common carrier, the keys are given to the carrier, and the car is out of the control of whoever may own it. Why do you suppose the Seventh Circuit didn't go on a consent basis there? Well, they did move over to the consent and said... They did? They moved over to consent and said, even if there had been a finding of standing, the consent was valid. So it's an alternative holding? It's an alternative holding. Judge Tilly just chose not to enter an alternative holding, but he correctly found, Your Honor, that this defendant did not have an expectation of privacy in this vehicle. And we'd ask the court to so affirm his ruling. I'll answer any other questions that the court may have. The basis that you have for no expectation of privacy is because the defendant doesn't have standing because the defendant didn't prove that he was the actual owner of the vehicle? Your Honor, I don't... He didn't prove that. He didn't prove that at any point in time he ever had possession of that vehicle. There was no evidence presented as to his legitimate expectation of privacy or standing, as the courts call it, Your Honor. None. See, I think... I'm sorry, Judge Tilly. No, go ahead. Go ahead. I'm learning. You keep saying he didn't present any evidence, but there's no rule of law that a defendant's standing can only be established by evidence that he or she presents. It is, in fact, more often true than not that a defendant's standing is actually established, particularly in a possession case, by the evidence introduced by the government. And that's why judges often don't spend the time worrying about standing, because usually a person's being prosecuted for drugs found in his own car or his own apartment, right? And so it's one of these somewhat odd cases where ownership is not as obvious as it should be, but in fact, he's been convicted of possessing with the intent to distribute the very narcotics seized from this vehicle. Now, that doesn't mean necessarily he has standing, but on the basis of the evidence that your brother counsel has pointed out to us, I'm hard-pressed to understand why that evidence is not sufficient. I'm not saying the district court would have found standing. I'm saying it seems to be sufficient to support a finding of standing. And on this record, Your Honor, we disagree respectfully that there is sufficient evidence to support that. Fair enough. Okay. Yes, sir. I want to go back to Judge Agee's question. Is it your position that there's no standing because the defendant has not shown he owned  Our position does not rely solely on ownership of the vehicle, Your Honor. There's no evidence that he owned the car. Then what does it rely on? Our position is a legitimate expectation of privacy. He hasn't shown that he ever possessed it, owned it, or any other fact, Your Honor, that would allow the argument by the defendant or finding by the district court that he had an expectation of privacy in the vehicle. Okay. And my next question is this. Is it your argument that because the car was given to a car carrier along with the car keys that he had no expectation of privacy in any part of that car, gas tank, trunk, glove box, anywhere? That is our argument, Your Honor. So you have two arguments as to why there's no legitimate expectation of privacy. Yes, sir. Are there any others that I've not articulated? Not that I can think of at this moment, Your Honor. Okay. Thank you, Ms. Hairston. Yes, sir. Reply. If I may, Your Honor, the analysis is kind of getting mixed up here. You're either going to say it doesn't matter what the facts are. You put that car on a carrier. You don't have an expectation of privacy because you're handing the keys to the driver. It doesn't matter if you're a drug dealer or if you're just a legitimate car dealer. It doesn't matter. You lose your expectation of privacy. That's one of her positions. And then they shift. And this is a problem. The court, in my estimation, rely on Crowder, didn't even go into it. We did keep talking about the facts of this case. But it seems like the court, the government, has been trying to sail along, blanket rule. Nobody has an expectation of privacy on that carrier when you put your car on there. That opens up, and that's what the Crowder court was doing, that opens up a Pandora's box of problems. The police can sit on a truck stop and request to search every time a car for any reason whatsoever with no basis and can search cars. You mentioned a valet in the hotel can get police and search my car for no reason. Car mechanics. Police can go to every mechanic garage out there, knock on the door and say, I want to search your car from beginning to end, or your patron's car. Even though you're doing an oil change, we want to search the trunk. This is what this is opening up. The better approach is, in fact, as was pointed out by this court, case by case. You do have an expectation of privacy to certain areas. It's not absolute. You look at the facts. The car does get driven on the carrier. So we say that's limited. And that's understandable. That's acceptable. But then where is this officer going based upon the driver giving the key to the officer? Can he go in the passenger compartment? I think so. Can he go into the trunk of a car? I'd say you have to look at the facts. And if there's no legitimate reason or it's not normal from a reasonable person's standpoint, from society's standpoint, that that car driver can go into the trunk, then we would say that is an expectation of privacy and it is reasonable. Now, there was a question about the standing of this case. Pardon me? Based on the language of the bill of lading or whatever document that you would have when you make your deal with the carrier, you may very well surrender your rights of privacy because you may consent to certain access by the carrier and you may designate the carrier as your agent. But since none of that evidence is in this record, it really can't be used. I don't think that exists. It's like going to a ball stadium. Anything you bring in there, you're going to be subject to being searched. Purse is everything. You've got a choice. Either go in there, subject yourself to the search, or you don't. And there is no proof in the facts. And that was for the government we submit to present that that bill of lading said, you put this car on here, you have no expectation of privacy and we can search anywhere and go through your car. You take your car to a mechanic shop and they send you a waiver saying we can go through anything and you have no expectation of privacy. We submit that wasn't presented because it doesn't exist. So then you've got to shift to the facts of the case. This case here. If the court were to hold, yes, there is an expectation of privacy and it is reasonable. Let's look at the facts of this case now. Then we shift to particular facts. False names. Can we locate this person? The standing issue then goes, was standing established in this case? Now I would like to refer to page 31 on the joint appendix. On cross-examination, I asked Captain Roberts, I said, talk about Wilmer Castaneda coming for the car. I'm sorry, you said page? Page 31. He's using the transcript numbers. Oh, oh, oh. Thank you. The joint appendix. I'm sorry, page 61. I apologize, Your Honor. Okay. All right. And it's on, we're talking about Wilmer Castaneda and on page, on line 15, and I asked the officer, and that person you later determined to be Mr. Arturo Castellanos, right? Correct? He says, as best I can figure, yes. He is saying that the Wilmer Castellanos that he spoke to on the phone, based upon what information Mr. Arturo brought with him, plus the phone number matching what he believed was Arturo Castellanos' cell phone, was actually Wilmer Castellanos' phone number. He drew the conclusion, I think could be quite correct, at that point, Wilmer Castellanos is Arturo Castellanos. That's our establishing that he is the same one he does have standing. So is the problem here that, and really, I don't mean this as criticism of you at all, but do you wish you had sort of pressed the district court a little harder to make clearer findings so that you could? Well he may, I think Judge Cleave was very clear, no legitimate expectation of privacy, and that was it. But see, the problem is, when we talk about legitimate expectation of privacy, we're talking about two different things sometimes. We're talking about the question of standing, whether this defendant can challenge this search, and we're talking about, as I suggested to Ms. Hairston, does anybody in the world, was this a search at all? Because the way I read the district court's abbreviated ruling, and as Ms. Hairston frankly argues, nobody in the world had an expectation of privacy in this vehicle. Which is another way of saying, there would be no search if nobody has an expectation of privacy, because the definition of a search is the invasion on an expectation of privacy. Intrusion to a Fourth Amendment interest. Exactly. So if nobody in the whole world had a protected Fourth Amendment interest, that's not a question of standing, that's a question of substantive Fourth Amendment applicability. That is correct, Your Honor. And when he said that, that's the end of the analysis, you don't even go to whether there's consent or any other exception to the search warrant requirement, it's over right there. Was there probable cause when he tapped on the... I would probably say not. And when he saw the bolt? I would say it rose to a reasonable suspicion, but I still have a hard time saying that gives rise to probable cause or not. Why am I not surprised? In there. Well, there could be other things, not saying he couldn't do other things, like a canine sniff, I don't know how that works, there could be other methods that could be used to do that. You need a pretty tall dog. Well, they're pretty good, from what I can tell, they can alert on a lot of stuff. So I'm not saying they were without other options, but just simply go in there, tap on it, hear the hollow, and then do the search, but then we can't even get to these exceptions, Your Honor, because the court said there's no expectation of privacy, there's been no invasion into a Fourth Amendment issue, so therefore we didn't even get to that at that point. I did argue the consent, I did address that, but when that was raised, that was... And that's why we're appealing, because that's the end, and this is our request to the court that they do not prank such a broad picture about car carriers, otherwise we could end up with the scenarios that I have presented this for. So Your Honor, we ask that the court would... We argue that the motion to suppress, that that be reversed and that the conviction be reversed as well, Your Honor. Thank you for your time. Thank you. We appreciate your representation of this client, I know you're court-appointed, we're very appreciative of your representation. I'll ask the clerk to adjourn court, and then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning at 8 o'clock.
judges: William B. Traxler, Jr., G. Steven Agee, Andre M. Davis